**Joseph HARRIS, Plaintiff,**

v.

**Richard D. OBENSHAIN et al.,
Defendants (two cases).**

Civ. A. Nos. 77–0723–R, 78–0141–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 12, 1978.

Saad El-Amin, Saad El-Amin & Associates, Richmond, Va., for plaintiff.

William S. Smithers, Jr., Thompson, Savage, Smithers & Marshall, Richmond, Va., for defendants 1–3.

James C. Roberts, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendant 4.

J. Waller Harrison, Richmond, Va., for defendant 5.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendant 6.

Nathan H. Smith, Archibald Wallace, III, Sands, Anderson & Marks, Richmond, Va., for defendants 7–9.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Joseph Harris, a black, is a former shareholder, director and officer of Atlantic Materials, Inc. Atlantic Materials was incorporated in 1971 and dissolved in 1973. Plaintiff alleges that certain of the defendants conspired to deprive him of his property interest in that organization and to dilute its value because of his race. The alleged members of this conspiracy (hereinafter referred to as the conspiracy defendants) are John R. Williams, Louis H. Williams, Harold L. Williams (the Williams brothers), Richard D. Obenshain, George R. Hinnant, the law firm of Obenshain, Hinnant and Dolbeare, and Mid-Atlantic Materials, Inc. (hereinafter referred to as Mid-Atlantic). Plaintiff further contends that the sole remaining defendants, the National Bank of Fredericksburg and the Small Business Administration, had knowledge of the alleged conspiracy and failed to prevent it in violation of 42 U.S.C. § 1986. Alleging violation of his rights under the Civil Rights laws,[1] plaintiff seeks injunctive relief, declaratory relief and monetary damages. The matter is before the Court on numerous motions to dismiss the complaint,[2] which having been briefed and orally argued, are ripe for disposition.

### Facts

The facts as alleged by plaintiff are deemed to be factual only for purposes of the pending motions to dismiss. Plaintiff alleges as follows:

In his first two causes of action plaintiff contends that his rights under 42 U.S.C. §§ 1981, 1982 and 1985 were violated. In 1969, the Williams brothers bought approximately 176 acres of land located in King George County, Virginia for the sum of $250,000.00. The land was bought with the intent to sell the property at a profit due to its sand and gravel deposits, but various attempts to sell or lease the property were unsuccessful. In 1970, the Williams brothers offered to sell the land to plaintiff for $1,000,000.00 and suggested that he borrow the money from the Small Business Administration (SBA). The SBA refused plaintiff's request for a $1,500,000.00 loan, but suggested that a loan might be feasible if a corporation were formed to establish an ongoing sand and gravel operation. This apparently was the genesis of Atlantic Materials, Inc. which was organized and formed on November 18, 1970 for purposes

---

1. Plaintiff alleges violations of 42 U.S.C. §§ 1981, 1982, 1985 and 1986. Plaintiff alleges violations of 42 U.S.C. 1988 but that statute is merely procedural and does not create rights or confer jurisdiction.

2. Each of the defendants has filed a motion to dismiss. All of the motions claim a statute of limitations defense. Several motions to dismiss are also based upon claims that the complaint does not allege racial animus or specifically describe instances of discrimination.

of conducting the operation of a sand and gravel business on the property. Plaintiff was made president of the corporation and held 51% of the common stock, making the Williams brothers minority stockholders. This arrangement was designed to persuade the SBA that Atlantic Materials was a "minority owned corporation" in order to gain preference in obtaining government contracts under the "business mainstream" program. It is the plaintiff's contention that once such a preference had been obtained, the conspiring defendants planned to eliminate plaintiff from the corporation. On June 15, 1971, Atlantic Materials applied to the SBA seeking a $350,000.00 loan, representing that plaintiff was president and 51% owner of the corporation. This loan application was rejected, allegedly because the loan officer felt that the Williams brothers had given plaintiff a 51% interest in the business solely to qualify for the "business mainstream" program.[3] On or about September 15, 1971, the National Bank of Fredericksburg (the Bank) agreed to lend Atlantic Materials $350,000.00 if the loan was backed by a 90% SBA guarantee. On September 29, 1971, the SBA approved the 90% guarantee of the proposed loan.

After the loan was approved, it is plaintiff's contention that the Williams brothers commenced their plan to dilute his majority stock interest in the corporation. Plaintiff contends that the defendants, Richard D. Obenshain, George R. Hinnant and their law firm of Obenshain, Hinnant and Dolbeare, aided the Williams brothers in this alleged conspiracy. The alleged conspiracy, plaintiff further contends, was carried out by the systematic exclusion of plaintiff from the operations of the corporation. The Williams brothers, allegedly with the aid of defendants Richard Obenshain and George Hinnant, prepared a resolution dated November 16, 1971, in which the corporation agreed to pay an inflated value for the land in King George County bought by the Williams brothers in 1969. Plaintiff, allegedly relying upon the honesty and integrity of defendants Williams brothers, Obenshain and Hinnant, executed the resolution as president of the corporation and thus authorized the corporate purchase of the land.

Plaintiff alleges that the Williams brothers further conspired to dilute his interest in Atlantic Materials at meetings of the Board of Directors of that corporation which were held on August 24, 1972, and September 14, 1972. Plaintiff states that the defendants claimed that his 51% stock ownership in the corporation had only been a temporary device and had been created merely to obtain the SBA guaranteed loan.

The minutes of the aforementioned meetings reflect that plaintiff agreed that his interest was at that time 25% of the profit of the corporation. While Mr. Obenshain had not been present at either meeting, he drafted the minutes. It is plaintiff's contention that he was unfairly and fraudulently deprived of his property rights at the aforementioned meetings.

During the summer of 1972, the Williams brothers allegedly made several attempts to sell Atlantic Materials and represented themselves as the principal owners of the corporation. One Richard Morauer of Howat Concrete Company, allegedly learned of the possible sale of Atlantic Materials and contacted the Williams brothers in reference thereto in 1972. It is alleged by plaintiff that Mr. Morauer and the Williams brothers drafted a tentative agreement for the sale of the assets of Atlantic Materials in October, 1972, and that Mid-Atlantic was formed in October, 1972, to facilitate the sale of the assets of Atlantic Materials. George R. Hinnant, who aided in the incorporation of Mid-Atlantic and Richard Morauer were named as two of the directors of Mid-Atlantic.

On November 13, 1972 at a special meeting of the Board of Directors of Atlantic Materials, new officers were elected and the sale of all of the assets of Atlantic

---

3. This does not imply that the SBA does not have any legal claim against any of the parties to this litigation.

Materials to Mid-Atlantic was officially proposed. Plaintiff contends that he was not notified of this meeting. Plaintiff's contention in this regard encompasses a charge of impropriety on the part of Richard Obenshain and George Hinnant as to the sale of the corporate assets, alleging that both men were deeply involved in the internal affairs of both corporations.

Plaintiff next contends that his majority interest was further diluted at a November 13, 1972 meeting by the issuance of additional shares of stock to the Williams brothers. At that meeting, directors voted to dissolve and liquidate Atlantic Materials pending stockholder approval. A resolution adopting the plan of the November 13, 1972 meeting was passed at a December 11, 1972 meeting of the stockholders of Atlantic Materials. Once again plaintiff contends that he was not given notice of this meeting. He alleges that the conspiracy was completed when he received only $1,763.00 out of $302,595.00 allegedly gained from the sale to Mid-Atlantic. Plaintiff contends that the accounting was performed by defendants Obenshain and Hinnant and is alleged to be fraudulent.

Plaintiff further alleges in his third cause of action violations of §§ 1981, 1982 and 1985 of Title 42 of the United States Code. It is plaintiff's contention that Richard Morauer and Mid-Atlantic participated in a conspiracy to dilute plaintiff's property interest in Atlantic Materials and alleges that these defendants had actual and constructive knowledge that plaintiff was majority shareholder of Atlantic Materials at the time that they proceeded with the sale in conjunction with the Williams brothers.

Plaintiff's fourth cause of action involves only the SBA and the Bank and alleges violations of 42 U.S.C. § 1986. His contention is that he approached officers of these organizations in 1972 with regard to the dilution of plaintiff's majority interest in the corporation. It is his contention that he was assured that no transfer or sale of assets could take place without the approval of the SBA and the Bank. Plaintiff claims further that on December 11, 1972, Mid-Atlantic assumed the $350,000.00 loan of Atlantic Materials and that neither the SBA nor the Bank exercised their rights of disapproval. It is his contention that the SBA and the Bank knew of the sale of the assets, of his opposition to the sale, and that he was the majority shareholder in the company, yet they did nothing to prevent the alleged conspiracy.

### Conclusion of Law

Accepting for purposes of this motion that all of plaintiff's allegations are factual, the Court will address the various pending motions which are as follows:

(1) Defendants contend that the § 1986 claim for failure to prevent a conspiracy is barred by the one year statute of limitations; (2) the § 1981, § 1982, and § 1985 claims alleging deprivation of property and conspiracy are likewise barred by the statute of limitations of two years; (3) the § 1981, § 1982 and § 1985 claims are barred by a five year statute of limitations; (4) the plaintiff has failed to allege racial animus in his complaint; and (5) the plaintiff has failed to specify any acts of racial discrimination in his complaint.

### § 1986 Claim

In reference to the claim under 42 U.S.C. § 1986, it appears the plaintiff's sole complaint against the SBA and the Bank is that they failed to prevent the alleged conspiracy. There is no allegation that either organization was a member of the conspiracy. Plaintiff merely alleges that the SBA and the Bank had the power to prevent the conspiracy but neglected to do so. Regardless of the merit or lack of merit of plaintiff's claim against the SBA and the Bank, the suit is barred by the fact that no action will be sustained under § 1986 "which has not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. In the instant case the alleged incidents involved the year 1972. The instant suit was commenced in 1977 and is clearly beyond the statutory deadline of one year after the cause of action has accrued. Indeed, plaintiff's counsel in oral argument

before this Court conceded that § 1986 was inapplicable because of the statute of limitations. Plaintiff cannot complain now of alleged wrongs he knew about in 1972 and 1973.

### § 1981, § 1982 and § 1985 Claims

▆▆ Defendants' second ground for dismissal is that plaintiff's §§ 1981, 1982 and 1985 claims are barred by a two year statute of limitations. It is their contention that the acts complained of by plaintiff occurred prior to and including the year 1972. In light of the fact that these sections, § 1981, § 1982 and § 1985, contain no specific statutes of limitation, the Court must look to the applicable state statute to determine whether the suit is timely filed. *Runyon v. McCrary*, 427 U.S. 160, 181, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Court is satisfied in the instant case that the applicable state statute of limitations is § 8–24 of the Virginia Code.[4] That statute provides that every action for personal injury must be brought within two years after the cause of action occurred and all other actions shall be brought within five years if no other limitation is otherwise prescribed. The Courts in this circuit have consistently held that the applicable Virginia state statute of limitations is two years for actions alleging violations of the Civil Rights laws. *Runyon v. McCrary, supra, affirming*, 515 F.2d 1082 (4th Cir. 1975) (1981 suit); *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir. 1976) (1981 suit); *See also Almond v. Kent*, 459 F.2d 200, 203 (4th Cir. 1972) (1983 suit); *Allen v. Gifford*, 462 F.2d 615 (4th Cir. 1972) (1982 suit). In addition there are numerous district court holdings in this circuit to the same effect. Even in light of the overwhelming authority to the contra, plaintiff contends that the five year statute of limitations contained in § 8–24 of the Virginia Code applies in the instant case to the alleged violations of 42 U.S.C. §§ 1981, 1982 and 1985. Plaintiff's theory simply stated is that the instant suit involves a deprivation of property due to discrimination and does not involve any personal injuries or humiliation. It is contended that since no personal injuries are alleged, the five year Virginia statute of limitations should apply. Plaintiff attempts to distinguish the prior civil rights cases, all of which apply a two year statute of limitations, by contending that those suits simply involve humiliation and injured feelings due to discrimination. Plaintiff further contends that there is no per se rule applying a two year statute of limitations in Virginia to § 1981, § 1983 or § 1985 actions and that in the instant case where only property rights are involved, the five year statute of limitations should be applied.

In the Court's view the plaintiff has misconstrued the thrust of the many opinions involving § 8–24 of the Virginia Code and the civil rights laws. Allegations that a person's civil rights have been violated involve federal rights. As this Court has previously stated, violations of these sections are "constitutional torts".[5] The mere fact that property or personalty is involved does not change the focus of these sections. Sections 1981–1986 involve constitutional rights and are directly concerned with discrimination while contractual property rights are basically state issues. In its simplest form the instant case encompasses

---

**4.** Section 8–24 of the Virginia Code reads as follows:

Of actions not before specified.—Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. The amendment extending the period within which an action for personal injuries may be brought under this section to two years shall not apply to any cause of action arising prior to July one, nineteen hundred fifty-four.

**5.** *Bulls v. Holmes*, 403 F.Supp. 475 (E.D.Va. 1975); *Van Horn v. Lukhard*, 392 F.Supp. 384 (E.D.Va.1975).

only the relevant question as to whether defendants deprived plaintiff of his property because he was black. This is basically a tort, a personal injury issue requiring the two year statute of limitations under § 8–24 of the Virginia Code. Sections 1981–1986 are concerned with state contractual or property rights *only* so far as they are involved with constitutional rights. Discrimination and deprivation of constitutional rights are the key focus of the civil rights laws and those actions are basically tortious in nature. This "constitutional tort" theory underlies the rationale of *Almond v. Kent,* 459 F.2d 200 (4th Cir. 1972), and every other civil rights case in Virginia, all of which have applied a two year statute of limitations.

Moreover, there is a very practical reason for requiring a § 1981, § 1982 and § 1985 claim be brought within two years as are other personal injury suits in Virginia. This reason relates to problems of proof. Allegations of violations of the civil rights statutes involve matters of intent and rely heavily upon the in Court testimony of witnesses. A statutory limitation of two years is obviously more desirable than a five year statute, since the longer the time between the cause of action and the trial, the less the opportunity of witnesses to recall events. Finally, the plaintiff has failed to distinguish the instant case from prior cases involving property rights and §§ 1981, 1982 and 1985. In *Sitwell v. Burnette,* 349 F.Supp. 83 (W.D.Va.1972) the Court applied the two year statute of limitations to a § 1983, § 1985 suit which alleged failure to renew a teaching contract. In *Allen v. Gifford,* 462 F.2d 615 (4th Cir. 1972) where the alleged violations of §§ 1982 and 1983 dealt with the refusal to sell a house to a black were held subject to a two year statute of limitations. In *United States v. Immordino,* 386 F.Supp. 611 (D.C.Col.1974) a § 1982 claim involving refusal to rent was subjected to a two year statute of limitations. The preceding cited cases involve claims related to property, yet a two year statute of limitations was applied. The claims in the instant case are not dissimilar. It is clear in the case law that mere reference to property does not change the tortious nature of a civil rights action. The Court in *Almond v. Kent, supra,* succinctly described the situation when it stated "§ 1983 creates a federal cause of action, unknown at common law . . . this right of recovery depends upon federal considerations, and it is not one which is concerned with the archaic concepts of survivability of the common law" (citations omitted) *supra* at 204.

For the reasons previously stated it is the opinion of this Court that a two year statute of limitations applies to the § 1981, § 1982 and § 1985 claims against the defendants. Plaintiff discovered the dilution of his interest in Atlantic Materials in 1972–1973, more than two years prior to the institution of this suit which was filed in 1977. The plaintiff was aware of the loss of his property yet he waited until 1977 to complain about these events. There is simply no reason, nor has one been offered, why a suit was not brought earlier. The statute of limitations was designed to protect the rights of defendants from "stale" claims. It would be unfair to proceed to trial at this late date with claims of conspiracy which allegedly occurred in 1972 and 1973. Therefore, the § 1981, § 1982 and § 1985 claims in plaintiff's complaint are barred by the two year statute of limitations contained in § 8–24 of the Virginia Code.

The Court's decision that the two year statute of limitations applies makes it unnecessary to consider defendants' contention that a five year statute of limitations was not met, as it is unnecessary to consider defendants' claim that the complaint is deficient for failure to allege racial animus and for failure to describe specific instances of discrimination.

The dismissal of the § 1981, § 1982, § 1985 and § 1986 claims disposes of all of the federal claims in the instant suit.

An appropriate order will issue.