Brenda PATTERSON, Appellant,

v.

McLEAN CREDIT UNION, Appellee.

No. 85–2394.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1986.

Decided Nov. 25, 1986.

Harold L. Kennedy, III, Harvey L. Kennedy (Kennedy, Kennedy, Kennedy and Kennedy, Winston-Salem, N.C., on brief), for appellant.

H. Lee Davis, Jr. (George E. Doughton, Jr., Hutchins, Tyndall, Doughton and Moore, Winston-Salem, N.C., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this action the plaintiff, Brenda Patterson, sued her employer, McLean Credit Union (McLean), on claims, under 42 U.S.C. § 1981, of racial harassment, and failure to promote and discharge, together with a pendent state claim for intentional infliction of mental and emotional distress.* The district court submitted the § 1981 discharge and promotion claims to the jury which returned a verdict in favor of McLean, and granted directed verdicts to McLean on the § 1981 racial harassment claim and on the pendent state claim for intentional infliction of mental and emotional distress. We hold that the claim for racial harassment was not cognizable under § 1981; that the evidence was insufficient to support the pendent state claim; and that the court did not err in its jury instructions nor in its evidentiary rulings on the submitted claims under § 1981. We therefore affirm.

I

Brenda Patterson, a black woman, was an employee of McLean Credit Union from May 5, 1972 to July 19, 1982, when she was laid off. Robert Stevenson, McLean's president, hired Patterson to be a teller and file

---

* Presumably for statute of limitations reasons, Patterson did not assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

coordinator. According to Patterson's testimony, when he hired her, Stevenson told Patterson that the other women in the office, who were white, probably would not like her because she was black.

During her ten years of employment with McLean, Patterson experienced treatment that she considered to be racially motivated harassment by Stevenson. She testified that he periodically stared at her for several minutes at a time; that he gave her too many tasks, causing her to complain that she was under too much pressure; that among the tasks given her were sweeping and dusting, jobs not given to white employees. On one occasion, she testified, Stevenson told Patterson that blacks are known to work slower than whites. According to Patterson, Stevenson also criticized her in staff meetings while not similarly criticizing white employees.

Patterson never was promoted from her position as teller and file coordinator throughout her tenure at McLean. Susan Williamson, a white employee who was hired by McLean in 1974 as an accounting clerk, received a title change from "Account Junior" to "Account Intermediate" in 1982. This title change entailed no change of responsibility. Patterson asserted that Williamson's title change was a promotion that Patterson herself should have received, based primarily on her seniority over Williamson. Patterson also claimed that her 1982 layoff was discriminatory because white employees with less experience kept their jobs.

Patterson based her § 1981 claims and her state claim of intentional infliction of mental and emotional distress on the evidence above summarized. The district court held that a claim for racial harassment is not cognizable under § 1981, and refused to submit that claim to the jury. Examining North Carolina case law applicable to Patterson's pendent state claim, the district court concluded that Stevenson's treatment of Patterson did not rise to the level of outrageousness required under state law for recovery for intentional infliction of emotional distress and directed a verdict against Patterson on that claim. The court submitted the § 1981 claims for discriminatory failure to promote and discharge to the jury, which returned a verdict for McLean. This appeal followed.

## II

Patterson first challenges the court's refusal to submit her related claims for racial harassment and intentional infliction of mental and emotional distress to the jury.

## A

■ We hold, in agreement with the district court, that Patterson's claim for racial harassment is not cognizable under § 1981, which provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." That racial harassment claims are cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, does not persuade us otherwise. The broader language of Title VII, which makes unlawful "discriminat[ion] against any individual with respect to his compensation, *terms, conditions,* or *privileges* of employment, because of such individual's race," 42 U.S.C. § 2000e–2(a) (emphasis added), stands in critical contrast to § 1981's more narrow prohibition of discrimination in the making and enforcing of contracts. *Cf. United States v. Buffalo,* 457 F.Supp. 612, 631 (W.D.N.Y.1978) (the intentionally broad provisions of Title VII accommodate claims based on having to work in a racially discriminatory environment), *modified on other grounds,* 633 F.2d 643 (2d Cir.1980). Claims of racially discriminatory hiring, firing, and promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection. Instances of racial harassment, on the other hand, may implicate the terms and conditions of employment under Title VII, *see, e.g., EEOC v. Murphy Motor Freight,* 488 F.Supp. 381, 384–86 (D.Minn.1980), and of course may be probative of the discriminatory intent required to be shown in a § 1981 action, *see, e.g., Carter v. Duncan-Huggins, Ltd.,* 727 F.2d 1225, 1233 (D.C.Cir.1984), but,

standing alone, racial harassment does not abridge the right to "make" and "enforce" contracts—including personal service contracts—conferred by § 1981.

The cases relied on by Patterson are not to the contrary. None directly holds that racial harassment gives rise to a discrete claim under § 1981, as distinguished from recognizing that racial harassment may be relevant as evidence of discriminatory intent supporting a cognizable claim of employment discrimination under § 1981 and that it may give rise to a discrete Title VII claim. *See Murphy Motor Freight*, 488 F.Supp. at 384 (Title VII claim for racial harassment); *Buffalo*, 457 F.Supp. at 632–35, 636–37 (discriminatory work environment claim under Title VII; 1981 claims of discriminatory assignment and termination). *But cf. Goodman v. Lukens Steel Co.*, 580 F.Supp. 1114, 1164 (E.D.Pa.1984) (very generally citing § 1981, along with Title VII, as a basis for a claim of racial harassment); *Croker v. Boeing Co.*, 437 F.Supp. 1138, 1191–92, 1193–94, 1195, 1198 (E.D.Pa.1977) (discussing racial harassment claim only under Title VII, but indicating liability based upon both Title VII and § 1981 in order), *modified on other grounds*, 662 F.2d 975 (3d Cir.1981).

We therefore affirm the district court's grant of directed verdict in Patterson's claim of racial harassment under § 1981.

### B

We also agree with the district court that Patterson's evidence was not sufficient to support submission of her pendent state claim of intentional infliction of mental and emotional distress. The essential elements of such a claim under North Carolina law are (1) extreme, outrageous conduct, (2) intended to cause and causing (3) severe emotional distress. *E.g., Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C.1981). The district court ruled that given its most favorable reading, Patterson's evidence of McLean's conduct did not rise to the level of outrageousness and extremity required by the North Carolina courts to allow recovery under this cause of action. We agree with this assessment. The standard of "outrageousness" established in the rel-

atively few state court decisions is understandably a stringent one. Recovery under that standard has been permitted only for conduct far more egregious than any charged to McLean in Patterson's evidence.

For example, in *Woodruff v. Miller*, 307 S.E.2d 176, 178 (N.C.App.1983), recovery was permitted where a defendant had employed what the court characterized as "truculent, vindictive methods" inspired by a "consuming animus against plaintiff" to circulate a thirty year old record of plaintiff's *nolo contendere* plea to a criminal charge, had compared plaintiff to dangerous fugitives, and had taken open delight in plaintiff's resulting mental disturbance.

In *Dickens*, recovery was permitted against a defendant who had assaulted plaintiff and threatened to kill him unless he left the state.

Of particular relevance is *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116 (N.C.App.1986), in which one of three female plaintiffs recovered for intentional infliction of emotional distress when a fellow employee of her employer-defendant screamed and shouted at her, engaged in non-consensual and intimate sexual touching, made sexual remarks, and threatened her with a knife. Significantly, the two other plaintiffs were denied recovery though the same fellow employee had screamed, shouted, and thrown a menu at one of them and had given strenuous work to and denied the request of another, who was pregnant, to leave work when she thought she was in labor.

Evaluated in light of the stringent standard established by these decisions, the conduct of McLean through its president, Stevenson, was not "extreme and outrageous." That Stevenson stared at Patterson often, gave her too much work, required her to sweep and dust, and commented that blacks are slower than whites are facts that, though patently unworthy if true, fall far short of those in any North Carolina decision finding "extreme and outrageous" conduct under this state tort cause of action.

We therefore affirm the district court's grant of directed verdict on this claim.

### III

Patterson next challenges the exclusion of proffered testimony by two witnesses in support of her submitted claims of employment discrimination under § 1981 and a jury instruction respecting claimant's burden of proof on her promotion claim.

Marie Roseboro was tendered as an expert in personnel administration and would have given an opinion that Patterson was better qualified than Susan Williamson for the "promotion" given the latter. The district court refused to admit this proffered testimony on the basis that it did not meet the requirement of Fed.R.Evid. 702 that expert testimony be helpful to the trier of fact.

The court also excluded the lay testimony of another black woman formerly employed by McLean, Anita Reid Stovall, to the effect that she had experienced harassment by Stevenson during her employment in 1972. The court ruled this testimony inadmissible under Fed.R.Evid. 403, finding its probative value on the issue of discriminatory intent outweighed by its remoteness in time and its potential to confuse and mislead the jury.

■ There was no abuse of discretion in the trial court's decision to exclude the testimony of these two tendered witnesses. Because of the remoteness in time of the events to which Stovall would have testified, the probative value of that evidence would have been slight and the court could properly conclude that its slight value was outweighed by the likelihood of confusion it might create on the issue on which it was tendered. See Fed.R.Evid. 403.

■ The district court also could properly conclude that Roseboro's proffered testimony regarding the relative qualifications of Patterson and other McLean employees would not be helpful to the jury so as to justify its admission as expert opinion under Fed.R.Evid. 702. The trial court's conclusion that the jury needed no aid in making a finding on the relative qualifications of clerical employees at a credit union, a comparison that is not a highly technical or complicated one, was not an abuse of its discretion.

### IV

■ Finally, Patterson complains that the trial court erroneously instructed the jury that in order for her to prevail on her promotion discrimination claim, she had to show that she was more qualified than Susan Williamson. There was no error in the instruction given.

An employee claiming race discrimination in employment decisions under § 1981 must prove intentional discrimination. Such a claim is therefore comparable to the individual disparate treatment claim under Title VII. The disparate treatment proof scheme developed for Title VII actions in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny, may properly be transposed, as here, to the jury trial of a § 1981 claim. *See Carter,* 727 F.2d at 1232. Under that scheme, once an employer has advanced superior qualification as a legitimate nondiscriminatory reason for favoring another employee over the claimant, the burden of persuasion is upon the claimant to satisfy the trier of fact that the employer's proffered reason is pretextual, that race discrimination is the real reason.

That was the situation here, and the district court therefore properly instructed the jury that the burden was upon the claimant to prove her superior qualifications by way of proving race discrimination as the effective cause of the denial to her of "promotion." *See Young v. Lehman,* 748 F.2d 194, 197–98 (4th Cir.1984); *see also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1010, 1016 (1st Cir.1979) (effect on jury instructions of transposing *McDonnell Douglas* proof scheme to jury trial of ADEA claim). This simply reflects the principle established in Title VII cases that an employer may, without illegally discriminating choose among equally qualified employees notwithstanding some may be members of a protected minority. *See Anderson v. City of Bessemer City,* 717 F.2d 149, 154 (4th Cir. 1983), *rev'd on other grounds,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The court's instructions here were therefore proper.

AFFIRMED.