Felisha A. BRADLEY, Plaintiff,

v.

CARYDALE ENTERPRISES, Holly Court Apartments, Dale Weed, Paul Kincheloe, Jr., Betty Doss, and Ann Hall, Defendants,

v.

Deborah GILL, Third Party Defendant.

Civ. A. No. 88–1362–A.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 9, 1989.

As Revised March 27, 1989.

Niki Kuckes, Miller, Cassidy, Larroca & Lewin, Washington, D.C., Victor M. Glasberg, Jonathan M. Smith, Victor M. Glasberg & Associate, Alexandria, Va., Kerry Alan Scanlon, Washington Lawyers' Committee for Civil Rights, Washington, D.C., for plaintiff.

Ira Saul, Saul & Barclay, Fairfax, Va., for defendants.

## REVISED MEMORANDUM OPINION

ELLIS, District Judge.

The gravamen of this discrimination suit is the allegation that the management of an apartment complex discriminated in their treatment of one of their tenants, the plaintiff, on the basis of her race. Such discriminatory treatment, if proven, violates federal civil rights laws and state and local fair housing laws.[1] Defendants—employees, managers, and owners of the apartment complex—claim that the suit is untimely and seek its dismissal. In the alternative, defendants move to dismiss plaintiff's claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a cause of action. For the reasons set forth here, the Court concludes that plaintiff's suit was timely filed and states a claim for which relief may be granted. Accordingly, defendants' motion to dismiss is denied.

### Background [2]

This suit arises out of defendants' allegedly discriminatory handling of a bitter dispute between two tenants of Holly Court Apartments, plaintiff and one of her white neighbors. Plaintiff, a black woman, has

---

1. Specifically, plaintiff alleges violations of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; the Virginia Fair Housing Law, Va.Code Ann. §§ 36–88(1), 36–88(2) (Cum.Supp.1988); and the Fairfax County Human Rights Ordinance, Fairfax Co.Code §§ 11–1–3(a)(1), 3(a)(3), 3(a)(4), 3(a)(5) (1982). Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1337, 1343(a)(4) and 2201. Plaintiff's related state and local causes of action are pendent. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

2. The facts material to the resolution of the statute of limitations issue are not disputed. Many other facts in this case are certain to be hotly disputed. But solely for the purposes of defendants' motion to dismiss, the Court accepts as true the facts alleged in plaintiff's Complaint. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Edwards v. Duncan, 355 F.2d 993 (4th Cir.1966), Canty v. City of Richmond, Va., Police Dept., 383 F.Supp. 1396 (E.D.Va.1974), aff'd, 526 F.2d 587 (4th Cir.1975), cert. denied sub nom, Canty v. Brown, 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976).

been a Holly Court tenant since 1976. Holly Court is owned by defendants Weed and Kincheloe [3] and managed by defendant Carydale Enterprises ("Carydale"), a real estate company. Defendant Weed is also chairman of Carydale's Board of Directors. Defendants Doss and Hall are employees of Carydale; Doss is Holly Court's resident manager and Hall is the property manager.

The genesis of this dispute is traceable to December, 1985. At that time, plaintiff complained to Holly Court's rental office that a white neighbor, Deborah Gill, was harassing her.[4] Specifically, Gill had shouted racial epithets at plaintiff and allowed her dog to approach plaintiff, in violation of the apartment's leash requirements. Holly Court's standard procedure was to investigate and resolve all tenant complaints promptly. Moreover, the lease terms specifically provided for the immediate removal of any tenant engaging in "objectionable or unproper [sic]" conduct which infringed the "rights, privileges and welfare of other lessees in the building...." Notwithstanding this policy, Holly Court's management neither investigated nor resolved plaintiff's complaint concerning Gill's racial remarks and other harassing conduct.

The harassment continued through May of 1986. Plaintiff's black guests were also victims. As a result, plaintiff filed several additional complaints with the rental office—both orally and in writing—regarding Gill's racist remarks. Still, defendants took no action. In sharp contrast, defendants acted promptly to resolve other, non-racially related complaints at Holly Court. Carydale, for example, investigated and took action with respect to complaints filed by Gill against plaintiff. Gill had complained to the rental office that plaintiff played excessively loud music and at one point attempted to haul a sofa into her third floor apartment from her balcony, passing directly by Gill's second floor balcony. At the request of Carydale's management, plaintiff stopped playing loud music and made acceptable alternative arrangements to move the sofa into her apartment. Carydale also promptly addressed and resolved plaintiff's complaint that Gill's dog was unleashed. In May, 1986, the conflict reached a climax. On May 19, Gill verbally abused and physically threatened plaintiff and her black guests in the apartment parking lot. Plaintiff complained to Doss, who had arrived on the scene and witnessed at least part of the incident. Doss took no immediate action. Following this incident, defendants terminated Gill's lease for non-payment of rent. Subsequently, plaintiff, who was on a month-to-month lease, received a notice from Carydale ordering her to vacate her apartment within thirty days. No reasons were offered to plaintiff for her eviction.[5]

On June 7, 1986, plaintiff filed with the Fairfax Human Rights Commission ("Fairfax Commission") and the Virginia Real Estate Board ("Real Estate Board" or "Board") complaints of racial discrimination by Carydale. Carydale, after being contacted by representatives of the Fairfax Commission and the Board, agreed to postpone enforcement of the notice to vacate until August 30, 1986. Two months later, on October 27, Carydale issued a second notice to vacate, ordering plaintiff to leave her apartment by the end of November.[6] Plaintiff received that notice on October 29.[7]

---

3. Defendants assert that Weed and Kincheloe are trustees for Holly Court and, therefore, merely hold legal title. The distinction between legal and equitable title, however, is irrelevant to the Court's disposition of the instant motions.

4. Gill is the target of defendants' third-party complaint in this case.

5. Later, defendant Weed admitted in a hearing before the Fairfax County Human Rights Commission ("Fairfax Commission") that Carydale sought plaintiff's eviction only because it deter-

mined that the dispute between plaintiff and Gill could not be satisfactorily resolved.

6. According to defendant Weed, the second notice was issued because of apparent lack of progress on plaintiff's complaints before the Commission. The second notice, as the first, offered no reasons for the eviction.

7. On November 26, 1986, the Board found reasonable cause to believe that Carydale's eviction of plaintiff and application of its management policies to plaintiff violated the Virginia Fair

On October 27, 1988, plaintiff filed this action seeking declaratory judgment, permanent injunctive relief, compensatory and punitive damages, costs, and attorneys' fees. Defendants now seek dismissal on two grounds: (1) plaintiff's suit is time-barred; and (2) plaintiff's claims fail to state a cause of action. Both defenses are without merit; each is addressed in turn.

## Analysis

### 1. Statute of Limitations

 The parties agree, as they must, that plaintiff's federal claims are subject to Virginia's two-year personal injury statute of limitations.[8] What they do not agree on—and the legal question presented by defendants' motion—is the precise date this statutory period began to run.[9] The answer is straightforward: where, as here, there is a "continuing course of racially discriminatory conduct," the date of the last discriminatory act determines a suit's timeliness.[10] In the case at bar, plaintiff alleges a series of discriminatory acts by defendants, beginning with their refusal to address plaintiff's complaints of racial harassment and culminating with the second notice to vacate. The second notice, the last allegedly discriminatory act, was received by plaintiff on October 29, 1986. This date, therefore, marks the commencement of the statutory limitations period. Plaintiff's suit—filed on October 27, 1988—falls just within the two-year statutory period.

Defendants argue unpersuasively that plaintiff's Complaint does not claim a series of "continuing violations," but rather a sin-

---

Housing Law. Shortly thereafter, Carydale informed plaintiff that she could remain in her apartment on her month-to-month lease. On December 31, 1986, the Fairfax Commission also found sufficient evidence to support plaintiff's allegations of racial discrimination. The Commission's subsequent conciliation efforts failed. A hearing was then held on May 4, 1988. On June 17, the Commission announced its finding that there was probable cause to believe that Carydale, in its treatment of plaintiff, had violated the Fairfax County Human Rights Ordinance. *See* Fairfax Co.Code §§ 11–1–1 *et seq.* (1982). The Commission then served notice on Carydale to cease and desist from these violations, to adopt fair housing guidelines, to provide fair housing training for its employees, and to pay plaintiff $10,000 in compensatory damages. As the Commission has no coercive enforcement powers, these proposed actions, however, serve only as recommendations. *See* Va. Code Ann. § 15.1–783.1.3. (Cum.Supp.1988). They are legally enforceable only by the County Attorney, with the approval of the Fairfax County Board of Supervisors. Fairfax Co.Code § 11–1–16(b) (1988). The Board of Supervisors has apparently declined to enforce the Commission's decision, and Carydale has refused to comply voluntarily.

8. It is well-established that, in these circumstances, Virginia's two-year personal injury statute of limitations applies to section 1981 or 1982 actions. *See Runyon v. McCrary,* 427 U.S. 160, 180–82, 96 S.Ct. 2586, 2599–600, 49 L.Ed.2d 415 (1976) (Section 1981 suit); *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 315, 50 L.Ed.2d 286 (1976) (Section 1981 suit); *Williams v. Norfolk & Western Ry. Co.,* 530 F.2d 539, 541 (4th Cir.1975) (Section 1981 suit); *Allen v. Gifford,* 462 F.2d 615, 615 (4th Cir.), *cert.*

denied, 409 U.S. 876, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972) (Section 1982 suit); *Harris v. Obenshain,* 452 F.Supp. 1172, 1176–77 (E.D.Va.1978) (Sections 1981, 1982, and 1985 claims). The parties also concede that the same two-year statute of limitations applies to plaintiff's state and local claims. Accordingly, defendants seek dismissal of the state and local claims as similarly untimely.

9. Although the limitations period for some federal civil rights actions is determined by state law, federal law determines when a claim accrues. *See Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975); *Sabet v. Eastern Va. Medical Auth.,* 611 F.Supp. 388, 397 (E.D.Va.), *aff'd,* 775 F.2d 1266 (4th Cir.1985).

10. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 381–82, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982) (in Fair Housing Act claim, complaint is "timely when it is filed within 180 days of the last asserted occurrence of [an unlawful continuing practice]"); *Espinoza v. Hillwood Square Mutual Ass'n,* 522 F.Supp. 559, 565–67 (E.D.Va.1981) (Fair Housing Act claims timely so long as at least one alleged violation occurred within statutory period); *White v. City of Suffolk,* 460 F.Supp. 516, 520 (E.D.Va.1978) (the local statute of limitations is not applicable when continuous discrimination, rather than a single discriminatory act, is alleged"); *cf. McCausland v. Mason Co. Bd. of Educ.,* 649 F.2d 278, 279 (4th Cir.1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (discriminatory employment complaint untimely; plaintiff failed to allege "additional overt discriminatory acts" in the limitations period).

gle act of alleged discrimination. In such cases, defendants argue, the statutory period begins when the discriminatory act was first communicated to plaintiff. *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). By defendants' calculations, plaintiff's claim accrued no later than June 7, 1986, when she formally filed complaints with the Real Estate Board and the Fairfax Commission. At that time, any alleged injury had occurred and plaintiff was fully aware of allegedly discriminatory acts.[11] Defendants conclude, therefore, that plaintiff's suit, filed more than two years after her local and state complaints were filed, should be time-barred. The flaw in this argument is defendants' mischaracterization of plaintiff's Complaint. She alleges not a single, discrete act of discrimination, but rather a sequence of separate acts, or failures to act, by defendants that she claims were racially discriminatory. This series ended in October, 1986 when defendant Carydale issued to plaintiff a second notice to vacate. Significantly, the second notice issued despite Carydale's assurances to the Fairfax Commission and the Real Estate Board, that it would halt, at least temporarily, enforcement of plaintiff's eviction. The second notice, therefore, was not simply a reminder of the earlier notice, but rather a separate, affirmative act of alleged discrimination. Because plaintiff's suit was filed within two years of her receipt of the second notice, it is timely.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), directly supports this conclusion.

There, the Supreme Court, in a housing discrimination suit, recognized that "a 'continuing violation' ... should be treated differently from one discrete act of discrimination." *Id.* at 381, 102 S.Ct. at 1125. Specifically, the *Havens Realty* court held that

> where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory limit from] the last asserted occurrence of that practice.

*Id.* This "continuing violations" rule reflects the court's efforts to reconcile the inherent tension between two important principles—the general policies undergirding statutory limitation periods and the broad remedial intent of Congress in enacting civil rights laws. *Id.* As the court noted, statutes of limitation are designed to "keep stale claims out of the courts." *Id.*[12] But staleness and its attendant problems are lessened or eliminated where a plaintiff alleges a continuing series of violations. *Id.* Also supportive of the "continuing violations" rule is the well-settled presumption that Sections 1981 and 1982 of the Civil Rights Act of 1866 should be construed broadly in view of their ambitious goal of eliminating racial discrimination.[13] And the need for the relief provided by these statutes may be even greater where a defendant continues to commit multiple acts of racial discrimination. In short, the "continuing violations" rule strikes an appropriate balance between the broad and impor-

---

**11.** Defendants also argue that filing of the Commission and Board complaints does not toll the statutory period because both bodies' powers are limited. Defendants are correct. The Fairfax County Ordinance authorizing the Commission specifically notes that the Commission is a non-exclusive remedy, that is, that private actions may proceed in tandem with grievances before the Commission. *See* Fairfax Co.Code § 11–1–14 (1982). The same is true for grievances filed with the Real Estate Board. *See* Va.Code Ann. §§ 36–93, 36–94(b) (1984 & Cum. Supp.1988). Plaintiff, however, has never suggested that the filings toll the statute of limitations. Rather, she maintains that the issue of tolling is irrelevant because her suit is timely.

**12.** *See also Coles v. Havens Realty Corp.*, 633 F.2d 384, 392 (4th Cir.1980) (Statutory time limits "protect litigants from perpetual threats of lawsuits and protect the integrity of enlightened fact-finding."), *modified sub nom, Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

**13.** *See Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987); *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969); *Jones v. Alfred E. Mayer Co.*, 392 U.S. 409, 415, 88 S.Ct. 2186, 2190, 20 L.Ed.2d 1189 (1968).

tant remedial goals of the statute and the need to protect against the unfairness inherent in stale claims.

The *Havens Realty* rationale is dispositive of the statute of limitations motion at bar. The fact that it involved a federal Fair Housing Act claim, 42 U.S.C. §§ 3601 *et seq.*, does not limit its applicability solely to such cases. Here, plaintiff, *inter alia*, asserts a claim under the Virginia Fair Housing Act, Va.Code Ann. §§ 36–88 *et seq.*, which is modeled after its federal counterpart. It follows then that the rationale of *Havens Realty* is fully applicable to Virginia Fair Housing Act cases. For the same reasons, *Havens Realty* applies with equal force to plaintiff's Sections 1981, 1982, and local claims and, indeed, to other analogous federal civil rights actions. Guided by this rule, the Court concludes that plaintiff has alleged continuing discriminatory acts, the last of which falls within the statutory period. The effect of this is to sweep within the limitations period the earlier alleged acts of discrimination.

*Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), defendants' principal case, is inapposite. There, a professor filed suit alleging that the college violated Title VII and Section 1981 when it denied him tenure. The professor's suit was filed more than two years after the tenure denial. He alleged, however, that the college had continued to discriminate against him throughout the remainder of his employment contract, a full year after the tenure denial. The Supreme Court rejected the professor's claims of continuing discriminatory acts; the professor could not point to any specific discriminatory actions that occurred during that year. *Id.* at 258–59 & n. 9, 101 S.Ct. at 504 & n. 9. Accordingly, the Court found "the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [the professor]." *Id.* at 259, 101 S.Ct. at 505. Significantly, the Court expressly warned that determinations of when the statutory period begins "necessarily must be made on a case-by-case basis," given the "widely varying circumstances" in each case of discrimination. *Id.* at 259 n. 9, 101 S.Ct. at 504 n. 9.

*Ricks* teaches, in essence, that a general accusation of "continuing violations" of federal anti-discrimination laws, without more, will not automatically trigger the *Havens Realty* statute of limitations rule. Rather, there must be allegations of specific discriminatory acts occurring within the statutory period. Here, plaintiff has made such allegations. In particular, she points to the second notice to vacate issued by defendants as a distinct, allegedly discriminatory act. That notice represents a separate action by defendants, reflecting their affirmative decision to force plaintiff's eviction from her apartment. It is unquestioned that this second eviction notice was received within the statutory period. Thus, the conclusion that plaintiff's claim is timely under *Havens Realty* is entirely consistent with *Ricks*.[14]

**14.** Defendants also rely on *Abramson v. University of Hawaii*, 594 F.2d 202 (9th Cir.1979), for the proposition that a cause of action accrues as soon as the discriminatory act is first communicated. That reliance is misplaced. In *Abramson*, the Ninth Circuit, *inter alia*, focused primarily on the threshold issue of whether the alleged discriminatory acts fell within the scope of the newly-enacted Title VII. *Id.* at 209–10. There, a professor alleged gender discrimination when she was denied tenure. Her suit was timely only if her claim had accrued under Title VII. *Id.* at 210 n. 6. The initial tenure decision was made before Title VII's effective date. Plaintiff, however, claimed that acts of discrimination against her continued even after the tenure denial. *Id.* at 209. The university, like defendants in the instant case, argued that her cause of action accrued when the tenure decision was first communicated to her. The Ninth Circuit, reversing the district court's grant of summary judgment for the university, noted that the professor

should have the opportunity to demonstrate that the ordinary and generally accepted tenure decision process included a review of reconsideration requests in the final year [after the university had informed her that tenure was denied] and that in her case the decision of the President ... to refuse to review her tenure denial constituted discrimination against her on the basis of sex.

*Id.* at 210. Here, plaintiff has made such a showing; she has alleged a distinct act of discrimination that fell within the statutory period.

The Court also rejects defendants' suggestion that plaintiff's request for equitable relief is barred by the doctrine of laches. As defendants correctly point out, "in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Sanford v. Sims*, 192 Va. 644, 649–50, 66 S.E.2d 495, 498 (1951) [citations omitted]. The converse is true here: given the Court's ruling here that plaintiff's legal claims are timely, her request for equitable relief is similarly timely.

### 2. Sufficiency of Plaintiff's Claims

■ Defendants also argue that plaintiff's suit fails to state a claim for which relief can be granted. In essence, defendants contend that the underlying action is nothing more than a dispute between tenants and that such disputes are not actionable under local, state or federal anti-discrimination laws. *Cf. Patterson v. McLean Credit Union*, 805 F.2d 1143, 1145–46 (4th Cir.1986) (racial harassment claim, standing alone, is not cognizable under § 1981), *cert. granted,* — U.S. —, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987). Defendants' shot is far wide of the mark; they misunderstand the point of plaintiff's claim. Their argument incorrectly focuses on the neighbor's racist acts rather than on defendants' apparent toleration of those acts. Such toleration arguably interfered with plaintiff's right to enforce and enjoy her lease. This is precisely what §§ 1981 and 1982 prohibit. By its terms, § 1981 guarantees, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981. Section 1982 is equally applicable; it provides that "[a]ll

citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, *lease,* sell, hold, and convey real and personal property." 42 U.S.C. § 1982 (emphasis added). Moreover, it is well-established that §§ 1981 and 1982 create private causes of action whereby individuals, such as plaintiff, may challenge private acts of racial discrimination infringing the interests protected therein. *See Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); [15] *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Plaintiff's claim, therefore, clearly states a federal cause of action.

*Patterson v. McLean Credit Union,* the case principally relied on by defendants, is easily distinguishable. *See Patterson,* 805 F.2d 1143 (4th Cir.1986), *cert. granted,* — U.S. —, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987). In *Patterson,* a black employee, *inter alia,* sued her former employer under § 1981, alleging racial harassment, discriminatory discharge and denial of promotions. The Fourth Circuit struck down the employee's § 1981 claim of racial harassment because she failed to demonstrate that the alleged harassment had "abridge[d] [her] right to 'make' and 'enforce' contracts ... conferred by § 1981." *Patterson,* 805 F.2d at 1145.[16] But the court further noted that "racial harassment may be relevant as evidence of discriminatory intent supporting a cognizable claim of employment discrimination under § 1981." *Id.* at 1146. Indeed, the employee's § 1981 claims for discriminatory failure to promote and discharge were allowed because "[c]laims of racially discriminatory hiring, firing, and promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection." *Id.* at 1145.

---

**15.** After its grant of certiorari in *Patterson v. McLean Credit Union,* 805 F.2d 1143 (4th Cir. 1986), *cert. granted,* — U.S. —, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987), a five-member majority of the Supreme Court decided to hear argument and require further briefing from the *Patterson* parties on whether the court's 1976 *Runyon* decision should be reconsidered. *See Patterson v. McLean Credit Union,* 485 U.S. 617, 108 S.Ct. 1419, 98 L.Ed.2d 29 (1988). Oral argument was

heard in October, 1988. Final disposition of *Patterson* and the *Runyon* issues raised in that case is still pending.

**16.** More precisely, the Fourth Circuit affirmed a directed verdict for the employer on its former employee's Section 1981 claim of racial harassment. *Patterson,* 805 F.2d at 1145.

Here, plaintiff's claims similarly refer directly to her lease contract. These claims are based not on her neighbor's racism, but on defendants' failure to investigate and resolve her complaint of racial harassment. That failure, if proven, abridged plaintiff's right to enforce her lease contract and would, therefore, come within the explicit terms of §§ 1981 and 1982's protective scope. Defendants' apparent toleration of the neighbors' racial harassment is evidence of defendants' discriminatory intent.

For similar reasons, plaintiff's claim also states causes of action under the Virginia Fair Housing Law, Va.Code Ann. § 36–88(1), (2) (Cum.Supp.1988) and the Fairfax County Human Rights Ordinance, Fairfax Co.Code §§ 11–1–1 to 11–1–17. The state law provides, in pertinent part, that

> [i]t shall be an unlawful discriminatory housing practice, because of race ... for any person having the right to sell, rent, lease, control, construct, or manage any dwelling constructed or to be constructed, or any agent, independent contractor or employee of such person:
>
> (1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith.

Va.Code Ann. §§ 36–88(1)——(2) (Cum.Supp. 1988). Plaintiff's allegations fit squarely within the statutory proscription against discrimination in "the provision of services in connection" with her rental of one of their dwellings.[17] Equally clear is that defendants' alleged actions, if proved, fit squarely within the county ordinance which, *inter alia,* prohibits

> any person, ... on the basis of race ... [from] fail[ing] to provide services, facilities or other amenities connected with one's ownership, lease, sublease, rental, possession or occupancy of housing; [or] ... [from] interfer[ing] with, interrupt[ing] or terminat[ing] one's ownership, lease, sublease, rental, possession or occupancy of housing or other enjoyment of any interest therein....

Fairfax Co.Code §§ 11–1–3(a)(1)(D) and 11–1–3(a)(1)(E) (1982). In short, plaintiff has alleged facts, which if proved, would entitle her to relief under federal, state and local law. *See Memphis v. Greene,* 451 U.S. 100, 123, 101 S.Ct. 1584, 1598, 67 L.Ed.2d 769 (1981); *McDonnell Douglas v. Green,*

---

17. *Hudler v. Cole,* 236 Va. 389, 374 S.E.2d 39 (1988), is not to the contrary. That decision rejected an effort to limit the scope of Virginia's Fair Housing Law, Va.Code Ann. §§ 36–86 through 36–96. There, a family sued a mobile home park that refused to rent them a space because they had a child. *Hudler,* 374 S.E.2d at 40. At the time, the Virginia Mobile Home Lot Rental Act ("Mobile Home Act"), Va.Code Ann. §§ 55–248.41 through 55–248.51, did not forbid parenthood discrimination. Plaintiff, accordingly, sought to use the Virginia Fair Housing Law. The trial court held that the Mobile Home Act preempted the Virginia Fair Housing Law because it was the later, more specific statute. *Hudler,* 374 S.E.2d at 40. The Virginia Supreme Court disagreed, holding that the statutes were complementary and that the Mobile Home Act focused sharply on discrimination not covered by the Virginia Fair Housing Law, namely, a landlord's refusal or restriction, for discriminatory reasons, of the sale or rental by an existing tenant of a mobile home in the landlord's mobile home park. *Id.* 374 S.E.2d at 42. *See also* Va.Code Ann. § 55–248.47 (1986). That was not the situation faced in *Hudler.*

There, the Hudlers were initial, prospective tenants, trying to rent space from the landlord for their mobile home. Because they were not trying to buy or rent a mobile home from an existing tenant, the Mobile Home Act did not apply to their claims. The Fair Housing Law, however, did apply; that law, the *Hudler* court explained, expressly protects initial, prospective tenants, such as the Hudlers. *Hudler,* 374 S.E. 2d at 42. But contrary to defendants' position here, the Virginia Supreme Court did not conclude, or intend to invite the inference, that the Virginia Fair Housing Law was restricted solely to prospective tenants of all types of property. Such a conclusion would ignore and render ineffective a substantial portion of the statute and contravene the broad, remedial policy of the Fair Housing Law to "prohibit discriminatory practices with respect to residential housing ...." *See id.* 374 S.E.2d at 41 [quoting Va.Code Ann. § 36–87(a) ]; *see also Commonwealth of Virginia, ex rel., etc. v. Lotz Realty Co., Inc., et al.,* —— Va. ——, 376 S.E.2d 54, 58 (1989) ("We will assume, without deciding, that the Fair Housing Law is remedial in nature and should be liberally construed.").

 

411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed. 2d 80 (1957).[18]

In sum, the Court concludes that plaintiff's suit is timely and states causes of action for which relief may be granted. Accordingly, defendants' motion to dismiss is denied. An appropriate Order has been entered.

**18.** The Court does not reach at this time plaintiff's assertion that the findings of the Real Estate Board and the Fairfax Commission are entitled to *res judicata* effect in connection with the state and local law claims.