Annie M. WALL, Plaintiff,

v.

AT & T TECHNOLOGIES, INC., Defendant.

No. C–89–330–G, C–89–337–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Dec. 11, 1990.

Annie M. Wall, Greensboro, N.C., plaintiff, pro se.

M. Daniel McGinn, Greensboro, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon defendant AT & T's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have fully briefed their positions, and the matter is now ready for a ruling. The court grants defendant's summary judgment motion with respect to the following issues: (1) the plaintiff's racial discrimination claims under both Title VII and Section 1981; (2) the plaintiff's racial harassment claims under both Title VII and Section 1981; and (3) plaintiff's sexual harassment claim under Section 1981. As to the remaining issues, the court finds that disputes of material fact exist and denies the defendant's summary judgment motion on these claims.

## FACTUAL SUMMARY

Plaintiff Annie M. Wall filed two complaints against Defendant AT & T Technologies, Inc. (AT & T). One suit alleged that the plaintiff suffered sexual and racial discrimination while employed at AT & T. The other action maintained that AT & T discharged Wall in retaliation for complaints about her working conditions. The factual basis for each of these claims will be addressed in turn.

### Racial Discrimination

Wall maintained that she suffered racial discrimination because AT & T failed to promote her to a PAE (Professional Administrative Employee) position. She alleged that Brownie Urquhart, an AT & T section chief, once remarked that AT & T never had and would not have a black on a professional level.

The plaintiff had complained at previous affirmative action meetings that blacks with college educations were not given paid positions while whites without college educations were receiving them. Although holding a college degree was commonly viewed as a requirement for PAE position workers, Wall knew this was not a firm requirement and that self-nomination was possible. Wall Deposition, p. 53. Wall

complained that she had been denied a PAE position on or around February 15, 1987, the date a white co-worker was promoted to a PAE position. The plaintiff had not applied for this job.

*Racial Harassment*

Plaintiff Wall's claims of racial harassment involved comments by her co-workers. In the late 1970's or early 1980's, Wall became upset when former AT & T Section Chief Jim Zanky asked her why blacks did not have pink gums like whites. In another incident, she considered co-worker Guy Cerrito's comment that she had pretty teeth a racist remark. Lastly, Wall alleged that Cerrito's stating his belief that Dr. Martin Luther King Jr. did not deserve a national holiday was another example of racial harassment at AT & T.

*Retaliatory Treatment and Discharge*

Wall also maintained that AT & T wrongfully discharged her after she complained to the Office of Federal Contract Compliance Programs (OFCCP) and the Equal Employment Opportunity Commission (EEOC) about her working environment. She cited an adverse change in her relationship with Doug Smith, one of her superiors. After she began to voice her discontent with AT & T, Wall overheard Smith telling Guy Cerrito, Joe Alphonso, Sue Barton, and Judy Smith that "[W]e are going to have to get rid of her." Wall Deposition, p. 60. When asked how he would remove her, Doug Smith allegedly replied that they could complain about her work and document these criticisms. In April 1987, Wall asked Smith to fill out an EEOC form which was a necessary part of her formal complaint. Smith allegedly told her the form was "a bunch of mess" and refused to sign it. Wall Deposition, p. 63.

Another alleged example of retaliation occurred when Wall became ill in 1987. She stopped working in May 1987 because of a back injury. She received a letter from AT & T informing her that she would be terminated if she failed to return to work by September 28, 1987. The defendant based its decision concerning Wall's ability to return to work on the opinion of its medical director, Dr. A.C. Cross. When

the plaintiff asked Dr. Cross to explain his opinion, he was uncooperative and allegedly told her that he did not have to tell her anything. Wall further contended that Dr. Cross failed to acknowledge receipt of a letter from her personal doctor, Dr. George Kilpatrick. Dr. Kilpatrick had expressed the opinion that plaintiff Wall was unable to return to work. AT & T responded that it never received this letter, but admitted that Drs. Cross and Kilpatrick had conversed.

The plaintiff did not return to work by the specified date, and AT & T terminated her. Two days later on September 30, 1987, she filed a second complaint with the EEOC. Shortly thereafter, AT & T decided to continue Wall's employment, and Dr. Cross suggested that the plaintiff receive a third medical opinion to determine her ability to work. Referred by AT & T's Dr. Cross, this third doctor agreed with Dr. Kilpatrick that the plaintiff was unable to work. AT & T then placed the plaintiff on a leave of absence.

Plaintiff did not return to her job until August 15, 1988. She eventually received another letter informing her that she would be terminated if she did not return to work. She had appealed Dr. Cross's opinion on her disability, but this appeal was denied. Despite severe pain, she returned to work. She then worked from August 15, 1988 to June 13th, 1989, missing twenty-one days during this period due to poor health. Wall maintained that her forced return aggravated her condition.

Wall is presently employed with the defendant as an M–20 secretary. On disability leave, she is under the care of three different doctors and receives treatment for depression and anxiety, as well as a bladder infection and symptoms of lupus.

*Sexual Harassment*

The plaintiff alleged that she worked in an environment where lewd sexual gestures and actions toward women were tolerated. She maintained that AT & T knew about this situation and did nothing to eradicate the problem. On one occasion, Wall contended, an AT & T supervisor participated in the sexual harassment. This

sexual harassment allegedly began when Wall worked for the defendant in New Jersey in the late 1970's and continued when her work division moved to North Carolina.

The plaintiff's sexual harassment claim focused on the activities of two of Wall's co-workers, Guy Cerrito and Joseph Alphonso. These men used paper balls to rate their female counterparts on a one-to-ten scale. The plaintiff's deposition noted that Cerrito was often graphic in expressing his desires towards certain women, while Alphonso supported his actions by laughing and "carr[ying] on." Wall Deposition, p. 26. Wall contended that, when women passed Cerrito's desk, he often indicated the size of that woman's breasts and hips with his hands. She also stated that "he would get up into all kinds of body movements, what have you, suggesting that he would like to have sex with that woman." Wall Deposition, p. 25. Cerrito had acted this way on many occasions toward several women, including the plaintiff. When Wall confronted Cerrito about his behavior towards women, he allegedly responded, "Well, you know, you really turn me on, too, you know, and I would like to—yeah, I would like to have sex with you too." Wall Deposition, p. 28.

While both Wall and Cerrito worked for AT & T in New Jersey, she complained to company supervisors about Cerrito's conduct, but no action was taken. After this section moved to North Carolina, Cerrito's behavior continued. The plaintiff eventually complained to Department Chief Mary Ellen Burke about the defendant's conduct, and Burke took the paper balls Cerrito and Alphonso used in their woman rating game. Although this action stopped the paper ball rating game for a few months, their other sexually graphic conduct continued. The plaintiff alleged that Dan Jones, an AT & T section chief, was also aware of these incidents, but did nothing about them. Rather, Wall contended, he coached and supported Cerrito and Alphonso.

Wall subsequently voiced a complaint about the conduct of Cerrito and Alphonso to AT & T's Equal Opportunity Office, the company's internal mechanism for addressing sexual harassment problems. Garland Alexander Redfear, III, Equal Opportunity Specialist at AT & T's Guilford Center, allegedly told the plaintiff that she "should be able to handle her own problems." Wall Deposition, p. 37. In a later conversation about the sexual harassment in her work area, Redfear told her to ignore it. Plaintiff's Motion in Opposition to Summary Judgment, p. 3. Wall contended that the activities of Cerrito and Alphonso still occurred when she filed her EEOC complaint on September 10, 1987. Her desk was eventually moved away from Cerrito's and Alphonso's desks, and she was not subjected to their lewd conduct. However, co-workers informed her that the lewd conduct continued as late as August 1988.

*Procedural History*

Plaintiff Wall filed two complaints against the defendant. On May 15, 1989, she filed *pro se* complaint C–89–330–G (Complaint 330), alleging that defendant AT & T had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Section 1981). This prayer for both legal and declaratory relief was based on the plaintiff's charge of discrimination (# 145870393) with the Equal Employment Opportunity Commission (right-to-sue notice received March 3, 1989). Wall maintained that the defendant wrongfully discharged her and that AT & T's decision to reinstate her employment through an administrative leave of absence and without pay resulted from its desire to retaliate against her. She further contended that her forced return to work in August 1988 aggravated her medical condition and requested damages for lost earnings and back pay. In its pleadings, AT & T responded that Wall did not file her complaint within the time limits established by Title VII and that her civil lawsuit contained allegations beyond the scope of her EEOC grievance.

Two days later on May 17, 1989, Wall filed another *pro se* complaint, C–89–337–G (Complaint 337), stemming from her EEOC complaint # 145870364 (right-to-sue re-

ceived February 18, 1989). This action alleged both racial discrimination and sexual harassment. In response, the defendant claimed that Wall's complaint with the EEOC was not timely, that her civil complaint was not filed within the time limits established by Title VII, and that certain allegations in her civil lawsuit extended beyond the scope of her EEOC complaint. Further, AT & T argued that Wall's claims based on Section 1981 were not actionable and that she has failed to establish a *prima facie* case of either discrimination or retaliation.

On August 4, 1989, the plaintiff's two civil actions were consolidated by court order. Defendant moved for summary judgment on April 9, 1990, and plaintiff Wall responded on May 30, 1990.

### DISCUSSION OF LAW

*Summary Judgment Standard*

The grant or denial of defendant's AT & T summary judgment motion hinges on the existence or non-existence of undisputed relevant facts. "[S]ummary judgment is proper *only* when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Invest. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987) (emphasis added). *See Birdwhistle v. Kansas Power and Light Co.,* 723 F.Supp. 570, 574 (D.Kan.1989) ("Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment."). Parties subject to a summary judgment motion may support their positions with affidavits, depositions, and other documentary evidence. Further, the nonmovant's evidence is taken as truth, and all reasonable inferences must be drawn in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ When deciding AT & T's summary judgment motion, the court must also consider Wall's status as a *pro se* plaintiff. In *Bullock v. Sweeney,* 644 F.Supp. 507 (N.D. Cal.1986), the court found that a *pro se*

plaintiff's pleadings and motions must be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (writings by *pro se* complainants held to "less stringent standards than formal pleadings drafted by lawyers"); *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir.1986); *Baumann v. United States,* 692 F.2d 565, 572 (9th Cir.1982). Although Wall is not entitled to a more lenient application of substantive law, *Wolfel v. United States,* 711 F.2d 66 (6th Cir.1983), "the court has some obligation to consider for [her] benefit legal theories that might be applicable." *Fate v. Dixon,* 649 F.Supp. 551 (E.D.N.C.1986).

The court finds that some of the presented issues are ripe for adjudication by summary judgment motion, while others are not. Each of the following discussions on Wall's claims considers whether that issue is ripe for adjudication by summary judgment. Where summary judgment is warranted, the court renders its decision.

*Racial Discrimination*

■ Plaintiff Wall alleged that AT & T discriminated against her because she was black. She argued that she was denied a PAE promotion because of her race and that white co-workers with less qualifications were promoted to these positions. A disparate treatment claim requires that the plaintiff prove she was treated less favorably than similarly-situated white employees. *Davis v. Monsanto Chemical Co.,* 858 F.2d 345, 347 (6th Cir.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989). *See, e.g., International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Wall pursues her disparate treatment action by two avenues, Title VII and Section 1981.

*Under Title VII*

■ Plaintiff's racial discrimination claim under Title VII must have satisfied the following standard of proof:

First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimina-

tion. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations and footnotes omitted). *See Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989), *motion denied,* — U.S. —, 110 S.Ct. 38, 107 L.Ed.2d 9 (1989); *Increased Minority Participation by Affirmative Change Today, Inc. v. Firestone,* 893 F.2d 1189, 1193 (11th Cir.1990); *Moore v. Charlotte,* 754 F.2d 1100, 1104–05 (4th Cir.1985), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). In addition to this general burden of proof, Title VII denial of promotion actions require that additional elements must be proved. "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094.

■ Under these standards of proof, Wall's denial of promotion action must fail. Wall bases her disparate treatment claim on AT & T's alleged denial of promotion for a PAE position. She suggested that less qualified whites received PAE positions while she and other blacks were passed over. Even if this were true, Wall's claim nevertheless remains non-cognizable because she failed to apply for the PAE position in question. Without applying for the job, the plaintiff could not be "passed over" for the PAE position awarded to a white co-worker. Thus, the defendant's motion for summary judgment on the disparate treatment Title VII claim is granted.

*Under Section 1981*

■ In addition to her Title VII disparate treatment claim, Wall also sought relief under Section 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), severely restricted Section 1981's applicability to racial discrimination suits. This ruling confined Section 1981's scope to "the making and enforcement of contracts." *Id.,* 491 U.S. at —, 109 S.Ct. at 2372.

Despite *Patterson's* narrowing of Section 1981's breadth in remedying racial discrimination, certain denials of promotion remain actionable. In one decision, the court held that "[d]iscriminatory promotion practices, because they may implicate the right to make a new employment contract, may state a Section 1981 claim even though they constitute post-contract formation conduct unrelated to contract enforcement." *White v. Federal Express Corp.,* 729 F.Supp. 1536, 1544 (E.D.Va.1990). *See, e.g., Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908 (4th Cir.1989) ("promotion from a clerk to a supervisor [in a company's accounting department] with a consequent increase in responsibility and pay satisfies this [*Patterson's* 'new and distinct relation'] test."); *McGinnis v. Ingram Equipment Co.,* 888 F.2d 109 (11th Cir.1989) (failure to promote seen as a refusal to contract and considered an actionable claim under § 1981); *but cf. White,* 729 F.Supp. at 1547 (Lateral changes and insubstantial changes in pay or responsibility do not constitute new contracts under *Patterson.*).

Wall's cause of action, however, fails because she did not claim that the defendant discriminated against her in the formation or enforcement of her contract with it. She did not apply for the position that she was allegedly denied, and this fatally undermines her claim for relief. AT & T's summary judgment motion on the Section 1981 racial discrimination claim, therefore, must be granted.

*Racial Harassment*

■ Plaintiff Wall also alleged that she faced racial harassment while employed

with defendant AT & T. She based this cause of action upon three communications made by her co-workers. One expressed to her his view that Dr. Martin Luther King, Jr. did not deserve a national holiday, another told her she had pretty teeth, and, lastly, a co-worker asked her why blacks did not have pink gums like whites. One court has "identified two requisite elements for a racially hostile work environment claim: 'repeated racial slurs and management's tolerance and condonation of the situation.'" *Davis*, 858 F.2d at 349 (*quoting Erebia v. Chrysler Plastics Products Corp.*, 772 F.2d 1250, 1256 n. 1 (6th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986)). That the alleged offenders were Wall's co-workers and not members of AT & T's management is irrelevant. *See White*, 729 F.Supp. at 1555 ("The term 'environment' is one of inclusion; it includes the entire universe of plaintiffs' relations with the employer."). In order to show racial harassment, Wall must prove "the alleged conduct constituted an unreasonably abusive work-related environment or adversely affected the reasonable employee's ability to do his or her job." *Davis*, 858 F.2d at 349. She need not create a common link between the three comments in order to demonstrate a racially discriminatory environment. The plaintiff pursued this racial harassment claim under both Title VII and Section 1981.

*Under Title VII*

■ Under the present facts, Wall's cause of action fails under Title VII because she cannot prove a *prima facie* case of racial harassment by a preponderance of the evidence. The court finds several problems with her racial harassment cause of action and its reliance upon the three comments in issue. First, one must seriously question whether the remarks about the merits of the King national holiday, the plaintiff's pretty teeth, and the color of black people's gums rise to the level of racial slurring discussed in *Davis*, 858 F.2d at 349. These remarks, even though they may allude to alleged differences between blacks and whites in terms of physical char-

acteristics and socio-political viewpoints, do not contain the contempt and cruelty commonly associated with racial slurs. Second, the plaintiff did not allege or demonstrate how these comments created an unreasonably abusive work environment. Wall failed to show how these three comments detrimentally affected the working conditions at AT & T. Third, she did not show how these comments detrimentally impacted her work performance. The plaintiff mentioned no negative job-related effects caused by these statements other than her shock at the alleged "insensitivity" of co-workers. Although Wall may have found these remarks personally offensive, their offensiveness did not rise to the level of legal cognizance under Title VII. Therefore, AT & T's motion for summary judgment on the Title VII racial harassment issue is allowed.

*Under Section 1981*

■ Wall's racial harassment claim under Section 1981 is clearly non-actionable. *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2363. In that decision, the Supreme Court limited Section 1981's scope to the formation and enforcement of employment contracts, and specifically held that racial harassment fell outside the scope of the statute's meaning. *Id.*, 491 U.S. at ——, 109 S.Ct. at 2372. Thus, Wall's racial harassment cause of action under Section 1981 falls to defendant AT & T's summary judgment motion.

*Retaliatory Treatment and Discharge*

Plaintiff Wall maintained that AT & T retaliated against her in a discriminatory fashion in two instances: (1) Doug Smith's alleged callous and resentful attitude toward her after she complained about her working conditions and (2) her employment termination. She pursued this claim under both Title VII and Section 1981.

*Under Title VII*

■ A *prima facie* case of Title VII retaliation must be proved by a preponderance of the evidence and consists of three elements: "(1) the employee is engaged in protected activities; (2) the employer took

adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). Defendant countered the plaintiff's claim by attempting to limit Wall's retaliatory treatment to events surrounding the King holiday controversy. It argued that the plaintiff's dispute with Cerrito over the merit of the King holiday occurred a year before she filed her initial charge of discrimination and that AT & T Supervisor Smith's change in attitude necessarily occurred well before this filing.

■ AT & T's argument failed to appreciate significant facts which are relevant to this issue. First, it ignored Wall's 1986 complaint to the defendant's Equal Employment Office concerning the King holiday incident. Regardless of a complaint's validity, this type of petition constitutes a "protected activity," and Title VII shields the plaintiff from retaliation when she employs informal, nonjudicial means to address discrimination problems.

Second, the defendant limited its pool of relevant facts to the plaintiff's deposition and disregarded other documents which are significant to this case, i.e., plaintiff's records, brief, etc. *See Anderson*, 477 U.S. at 242, 106 S.Ct. at 2505. Contrary to AT & T's contention, Wall did not base her retaliation claim concerning Doug Smith solely on his comments and change in attitude around the King holiday. She also noted his lack of cooperation and hostile attitude when she sought his assistance in April 1987. After she had filed a complaint with the OFCCP in February 1987 and had begun EEOC proceedings against the defendant, Smith refused to assist her with the necessary paperwork and told her that her charges were "a bunch of mess." This statement indicated Smith's and AT & T's awareness of Wall's intention to engage in a protected activity before it took adverse action against her. Under the "continuous act" doctrine, these actions by Smith may be linked to his change in attitude after the King holiday incident.

As for Wall's second claim of retaliation, AT & T's termination of her, the defendant argued that Wall's claim against it for retaliation is non-cognizable because no causal nexus exists between the initial charge of discrimination and her subsequent termination. AT & T contended that it was unaware of Wall's first charge of discrimination until *after* Dr. Cross had made his determination on her fitness to return to work. Consequently, it suggested that Dr. Cross's medical determination, not her employment termination by AT & T, forms the basis of her complaint.

It appears defendant AT & T sought to argue the plaintiff's case in order to perfect its own defense. In doing so, it ignored facts material to this question. First, one may reasonable presume that AT & T knew about Wall's complaint to the OFCCP and her plans to file an EEOC complaint before Dr. Cross made his determination on her fitness for employment. She had filed her complaint with the OFCCP in *February 1987* and had begun preparation for her EEOC charge of discrimination before she stopped working in *May 1987*. Dr. Cross made his recommendation that she could return to work in *early September 1987*. Although she stated at her deposition that her charge of retaliation stemmed from her first EEOC charge of discrimination in September 1987, defendant admitted in its brief that "the retaliation was the result of Plaintiff filing a Complaint against AT & T with the Office of Federal Contract Compliance Programs in *early 1987*. It does not allege retaliation against Plaintiff on the First Charge of discrimination." Defendant's Brief in Support of Summary Judgment Motion, p. 3 (emphasis added). AT & T's knowledge of her efforts to engage in a protected activity occurred before it took adverse employment action against her, and a reasonable trier of fact may infer a causal nexus between these two actions. Moreover, a fact finder could decide that the activities of Doug Smith, Dr. Cross, and AT & T management were parts of a continuing series of retaliatory acts committed in response to Wall's engagement in protected activities. *See Bradley v. Carydale*

*Enterprises,* 707 F.Supp. 217, 220–22 (E.D. Va.1989) (non-Title VII case); *White v. Suffolk,* 460 F.Supp. 516, 519 (E.D.Va.1978) (Title VII action). Thus, the defendant's summary judgment motion on the retaliatory discharge and retaliatory treatment issues is denied.

*Under Section 1981*

■ The court also finds that defendant's summary judgment motion on the retaliation claims under Section 1981 must likewise be rejected. Although defendant argued that *Patterson* removed retaliatory discharges from the scope of Section 1981, the court considers this position overly restrictive and rejects it. In *Birdwhistle v. Kansas Power and Light Co.,* 723 F.Supp. 570, 575 (D.Kan.1989), the district court found that "[t]he Supreme Court in *Patterson* was not asked to address, and did not address, whether alleged discriminatory discharge is actionable under a Section 1981 [claim]. We believe that discharge is directly related to contract enforcement and thus is still actionable under Section 1981 in light of *Patterson.*" Under this analysis, Wall's retaliation claim under Section 1981 withstands defendant's summary judgment motion.

In considering the second point of retaliation, Doug Smith's actions and statements toward the plaintiff, the court considers this conduct clearly within the scope of *Patterson.* Wall's filing of her complaint with the OFCCP and her request for Smith's required assistance in completing her EEOC forms fall within the category of activities relating to contract enforcement. Likewise, Smith's actions may be considered examples of retaliation in response to these efforts. His reluctance to assist Wall with her EEOC forms strikes at the heart of what Section 1981 aims to remedy.

In *Patterson,* Justice Kennedy addressed behavior like Smith's and wrote that Section 1981 "covers wholly private efforts to impede access to courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2373. Therefore, since a reasonable trier of fact could determine that Wall is entitled

to relief under Section 1981 on these claims, the defendant's retaliation summary judgment motion is denied.

*Sexual Harassment*

■ Plaintiff Wall alleged that AT & T engaged in sexual harassment during her tenure as an employee. She specifically referred to the lewd activities of co-workers Cerrito and Alphonso, the condonation of these activities by Section Chief Dan Jones, and AT & T's failure to address the problem adequately. First recognized in *Rogers v. EEOC,* 454 F.2d 234 (5th Cir. 1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972), a sexual harassment cause of action requires that a successful plaintiff prove "(1) that the conduct in question was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer." *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989) (*quoting Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir. 1987)). *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986); *White,* 729 F.Supp. at 1536.

In response to Wall's claims, the defendant presented four arguments. It suggested (1) that sexual harassment is not actionable under Section 1981 and (2) that Wall's claim is time barred because she failed to comply with Title VII time limitation requirements. If the plaintiff's claims passed these threshold defenses, the defendant further posited (3) that Wall cannot prove a *prima facie* case of sexual harassment because the facts alleged were not sufficiently severe or pervasive and (4) that liability cannot be imputed to AT & T. Each of these contentions will be addressed in turn.

*Under Section 1981*

■ Defendant correctly noted that sexual harassment cannot be remedied by Section 1981. In 1866 during the Reconstruction period, the United States Congress enacted this statute to create legal rights and remedies for the newly freed

black slaves. The legislature did not contemplate discrimination against women. Thus, this form of harassment is not actionable under Section 1981, *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), and the court grants defendant's summary judgment on this point.

### Under Title VII

■ In its time limitations argument, AT & T asserted that a Title VII plaintiff must file a charge of discrimination within 180 days of the alleged discriminatory events and that incidents occurring prior to this time frame are barred. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). AT & T relied upon this rule in presenting its position that Wall's allegations did not occur within 180 days of her first charge of discrimination. The plaintiff filed her EEOC charge on September 10, 1987, and AT & T maintained that Wall's claims are time barred because the incidents in question occurred before March 13, 1987.

The defendant's timeliness argument fails on two grounds. First, defendant AT & T considered the plaintiff's deposition as the sole factual basis of her suit. It failed to consider other documents which contained material facts relevant to this case. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. In her Brief in Response to Defendant's Motion for Summary Judgment and the documents supporting this brief, Wall sufficiently called into question whether the sexual harassment at AT & T continued up until the time she stopped working because of her back injury.

Second, the events occurring before March 14, 1987 may also be considered in her sexual harassment claim under the "continuing act" doctrine. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982), the United States Supreme Court ruled that "a 'continuing violation' ... should be treated differently from one discrete act of discrimination." "*Havens Realty* applies

with equal force to ... analogous federal civil rights actions." *Bradley*, 707 F.Supp. at 222. All of the actions of AT & T may be included in Wall's sexual harassment claim if the trier of fact finds "an uninterrupted pattern of discrimination, not a series of isolated, completed acts." *White*, 729 F.Supp. at 1551. "Under such circumstances, the statute of limitations does not begin to run until the last act has occurred, and if suit is thereafter timely brought, *all the earlier discriminatory acts are swept within the limitations period.*" *Id.* (emphasis added). In *Bradley*, the court rejected *Ricks*, the decision upon which defendant AT & T based its timeliness argument. A racial discrimination case, *Bradley* held that where the racially discriminatory conduct is continuous, the date of the last discriminatory act determines a suit's timeliness. *Id.* at 220.

Acceptance of AT & T's timeliness position would neglect the facts of this case and the spirit of Title VII. Beginning in 1977 while Wall, Cerrito, and Alphonso all worked for AT & T, Wall complained about the sophomoric conduct of Cerrito and Alphonso. Their sexual "games" continued for more than ten years without any permanent halt to their activities. A trier of fact could determine that their actions have been continuous and that the factual basis of Wall's sexual harassment claim should not be limited to incidents occurring after March 14, 1987. More importantly, a decision to the contrary would undermine the focus of Title VII, a remedial statute typically given broad and generous readings. The court finds that a trier of fact could determine that the activities of the defendant were continuous and that Wall's Title VII sexual harassment suit should not be time barred.

### SEVERE AND PERVASIVE SEXUAL HARASSMENT

■ In its brief in support of its summary judgment motion, the defendant suggested that sexual harassment at AT & T was not so severe or pervasive that it violated Title VII. "The harassment cannot be isolated or sporadic, ... nor merely a

part of casual conversation.... [T]he plaintiff must show a 'concerted pattern of harassment,' such as a 'steady barrage of opprobrious racial comment,' which is 'so excessive and opprobrious' that it constitutes a violation of Title VII." *Moffett v. Gene B. Glick Co., Inc.,* 621 F.Supp. 244, 271 (D.C.Ind.1985) (citations omitted). In determining whether the questioned sexual harassment was sufficiently severe or pervasive, "the fact finder must examine the evidence both from an objective perspective and from the point of view of the victim," *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989), but "[a]n employee may not be unreasonably sensitive to his [or her] working environment." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986) (*quoting Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)). *See, e.g., Rabidue v. Osceola Refining Co., Div. of Texas–American Petrochemicals, Inc.,* 805 F.2d 611, 620 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

■ The court finds that Wall has alleged facts sufficient to support a determination of severe or pervasive harassment. In *Moffett,* repeated exposure to racial and sexual epithets constituted "a concerted pattern of continuous harassment which pollutes a working environment." *Id.* at 271. A reasonable trier of fact could find that the activities of Cerrito and Alphonso "polluted" AT & T's working environment to the point that they violated Title VII. Women could not pass by their desks without being rated with paper balls, seeing two men make lewd gestures and comments in reference to their breasts and hips, and listening to lascivious invitations to engage in sexual relations. These acts, along with the creation of a barrier in order to separate the plaintiff from Cerrito and Alphonso, manifested a problem in AT & T's working environment. Whether this problem constituted enough "pollution" to violate Title VII remains a material question of fact.

Further, whether this sexual harassment became a condition of Wall's employment is also a question of fact. "When an employer fails to protect an employee from sexual harassment, thereby forcing the employee to endure an offensive environment or quit working, the harassment becomes a 'condition of employment' prohibited by Title VII." *Zabkowicz v. West Bend Co.,* 589 F.Supp. 780, 783 (1984) (citations omitted). "Conditioning of continuing employment on acceptance of suggestive remarks ... can violate Title VII." *Crockwell v. Blackmon–Mooring Steamatic, Inc.,* 627 F.Supp. 800, 807 (W.D.Tenn.1985). Wall may be able to prove at trial that sexual harassment had become a condition of her employment. When she asked Equal Opportunity Specialist Redfear to confront Cerrito and Alphonso about their respective behavior, he told her that she should solve the problem herself. She repeated this request, and Redfear told her to ignore the situation.

Wall's complaints to Department Chief Burke were similarly ineffective. The defendant suggested that because female supervisors like Burke did not complain about or discipline employees like Cerrito and Alphonso, severe or pervasive sexual harassment must not plague AT & T's working environment. "Plaintiff's supervisor was also female and, presumably, would be equally offended by such conduct if she had observed it." Defendant's Brief in Support of Summary Judgment Motion, p. 14. This position is misguided at best, disingenuous at worst. Even after Burke took the paper balls from Cerrito and Alphonso, their rating games, comments, and gestures nevertheless continued. She took no follow-up actions, nor did she monitor any change in Cerrito's and Alphonso's behaviors. By gauging the level of sexual harassment at AT & T according to one of its supervisors, the defendant ignores Burke's responsibilities and loyalties to her employer.

As the *Paroline* court noted, "[w]hether ... harassment was sufficiently severe or pervasive is quintessentially a question of fact. Summary judgment is inappropriate unless ... a fact finder could not reason-

ably conclude" that defendant should be held liable after viewing the facts in favor of the plaintiff. *Id.* at 105. We concur with the *Paroline* court on this issue and find that this question is not ripe for summary judgment.

### AT & T's IMPUTED LIABILITY

Lastly, AT & T argued that liability should not be imputed to it for the activities of Cerrito and Alphonso. This position rests on the presumption that an employer should not be found liable for sexual harassment unless company management condoned, tolerated, or participated in the discriminatory activities. The court disagrees with the defendant's analysis of *Paroline*'s fourth leg and its application to this case and finds that liability may be imputed to AT & T.

The defendant's imputed liability contention fails for three reasons. First, its reading on liability in sexual harassment is underinclusive. The proper inquiry on the liability should not be limited to the interaction between the employee and those who may act on behalf of a defendant, i.e., company management. Rather, those actors who may bind an employer in terms of imputed liability includes a broader range of individuals. In *White*, the court dismissed the defendant's argument that the plaintiffs' claims failed because management did not participate in the alleged discrimination. "The term 'environment' is one of inclusion; it includes the entire universe of plaintiffs' relations with [the defendant]." *Id.*, at 1555. Anyone can contribute to a sexually hostile environment. "The environment in which an employee works can be rendered offensive in equal degrees by the acts of supervisors, co-workers, or even strangers to the workplace. The capacity of any person to create a hostile or offensive work environment is not necessarily enhanced or diminished by any degree of authority which the employer confers on that individual." *Moffett*, 621 F.Supp. at 272 (citations omitted). Therefore, the fact that Cerrito and Alphonso are not managers does not necessarily absolve AT & T of imputed liability.

Second, were greater management participation in the discriminatory incidents required for imputed liability, the instant case nevertheless survives defendant's summary judgment motion. Wall alleged that AT & T Section Chief Dan Jones coached and supported the activities of Cerrito and Alphonso. Wall. Deposition, p. 34. Thus, even under the defendant's more restrictive view of imputed liability, disputes of material fact remain in this controversy.

Third and most importantly, AT & T may be found liable because a determiner of fact may find that it knew about the sexual harassment and failed to stop it. "In a hostile environment claim ... an employer is liable for one employee's sexual harassment of another worker if the employer had 'actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action.'" *Paroline*, 879 F.2d at 106 (*quoting Katz v. Dole*, 709 F.2d 251, 255 (4th Cir.1983)). "The measures required are reasonable affirmative steps to 'eliminate the harassment,' which 'maintain an atmosphere free of ... intimidation and insults.'" *Moffett*, 621 F.Supp. at 271 (citations omitted). The plaintiff's conversations with Department Chief Burke, Equal Opportunity Specialist Redfear, Cerrito, Alphonso, and other AT & T employees, and the creation of the barrier between the complainant and Cerrito and Alphonso, manifest the defendant's awareness of the sexual harassment problems.

In its defense, AT & T noted two attempts by AT & T managers to solve the problem. "Employer knowledge can be established by showing that the plaintiff complained to high management of the harassment...." *Moffett*, 621 F.Supp. at 270. Wall expressed to both Redfear and Burke her apprehensions about Cerrito and Alphonso. Both managers were aware that these men made the plaintiff feel very "uncomfortable." Wall Deposition, p. 40. Equal Opportunity Specialist Redfear's suggestions that she solve the problem herself and that she should simply ignore the situation may be reasonably regarded as AT & T's indifference to the issue and its

failure to address the problem. Coupled with Burke's ineffectual actions, Redfear's comments created a mockery of AT & T's internal grievance program and hampered an employee's objective of remedying a possibly discriminatory situation through nonjudicial means.

Moreover, employees in addition to Wall had complained to AT & T about the sexually hostile environment created by the activities of Cerrito and Alphonso. In *Paroline*, the court found that an employer's knowledge of harassment suffered by other females was highly relevant in determining whether the defendant should have anticipated harassment problems. *Id.* at 107. The plaintiff contended that co-workers informed her that the lewd conduct of Cerrito and Alphonso continued as late as August 1988. In one instance, Alphonso made sexual advances toward a female AT & T employee by calling her at home and following her. Wall noted that this woman was moved to a different department because of Cerrito's and Alphonso's harassments. Wall Deposition, p. 32.

The complaints by Wall and her female co-workers create a material factual dispute on whether or not the defendant had actual or constructive knowledge of sexual harassment and whether it failed to address the problem. Because the defendant's awareness of the situation and its efforts to take "quick and appropriate measures to remedy the situation" remain disputed, AT & T's summary judgment motion is denied. *Davis*, 858 F.2d at 349. The court finds that Wall may be able to show at trial that AT & T failed to remedy the sexual harassment situation.

## CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the court GRANTS defendant's summary judgment motion with respect to the following issues: (1) the plaintiff's racial discrimination claims under both Title VII and Section 1981, (2) the plaintiff's racial harassment claims under both Title VII and Section 1981, and (3) plaintiff's sexual harassment claim under Section 1981. As to the remaining issues, the court finds that disputes of material fact remain and DENIES the defendant's summary judgment motion on these claims. An appropriate Judgment will be entered in accordance with this Memorandum Opinion.